## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VISHAL SHAH, individually and on behalf of all other similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:25-cv-09124 |
| LIFE PROTECT 24/7, INC., | Honorable John Robert Blakey |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Life Protect 24/7, Inc. ("Life Protect" or "Defendant"), respectfully moves to dismiss the Class Action Complaint [Dkt. 1] ("Complaint") filed by Vishal Shah ("Shah" or "Plaintiff"). In support of this Motion, Life Protect states as follows:

## INTRODUCTION

Life Protect sells medical alert systems to interested consumers. It markets its services through text messages, but only once it receives prior express written consent from a consumer for a specific telephone number through an internet opt-in. Life Protect recently received consent from someone who provided Shah's alleged phone number. Relying on the opt-in, Life Protect then sent several texts to the number.

But Shah alleges he did not opt-in to get texts from Life Protect and that his telephone number is on the national do-not-call registry ("National DNC List"). Life Protect's marketing texts thus, according to Shah, violated the TCPA's prohibition against making telemarketing calls to numbers on the National DNC List without appropriate consent or an established business

relationship. Shah seeks relief for himself and a putative class of consumers with numbers on the National DNC List who allegedly received texts in violation of the TCPA.

Because Life Protect always obtains prior express written consent before sending a marketing text, there is no ascertainable class of consumers who received texts from Life Protect in violation of the TCPA. And while discovery would show this, Shah's case should not proceed past the pleadings. His Complaint makes clear that his TCPA claims fail as a matter of law.

The problem for Shah is that the private right of action to enforce the TCPA's prohibition on telemarketing to numbers on the National DNC List only applies to *telephone calls*: "a person who has received more than one *telephone call* within any 12-month period" may bring suit. 47 U.S.C. § 227(c)(5) (emphasis added). Shah does not allege he received telephone calls. He alleges that he received text messages. Yet calls and texts are not the same. And the TCPA's history and plain language show Congress understood the difference. So when Congress said in § 227(c) that someone can sue for violative "telephone calls," it meant just calls and not texts. Indeed, two months ago, a Seventh Circuit district court held exactly that. Shah's Complaint thus must be dismissed.[1]

---

[1] Life Protect's internet "opt-in" to obtain prior express written consent for marketing texts requires consumers to agree to an arbitration provision and class action waiver. Presently, Life Protect's records suggest that someone other than Shah may have opted in to texts using Shah's phone number. Should this case proceed to discovery, party and third-party discovery may ultimately show that Shah indeed opted in and thus agreed to arbitrate any claims against Life Protect on an individual, and not class, basis. But at this pre-discovery stage of the case, Life Protect lacks sufficient information in its custody, possession, or control to move to compel arbitration against Shah. Life Protect, however, reserves its potential right to promptly move to compel arbitration later in the case should it discover facts that show Shah did, in fact, opt-in and thus agree to arbitrate this dispute. By anticipating and disclosing this possibility of arbitration rights against Shah and the putative class, and through prompt action should relevant facts arise, Life Protect maintains and does not waive its right to arbitrate through the filing of this Motion, nor through subsequent and necessary litigation activity, including discovery. *Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1442 (N.D. Ill. 1993) (finding no waiver of arbitration right where "Plaintiff was clearly aware of Defendant's desire to proceed to arbitration"); *Leff v. Deutsche Bank AG*, No. 08 CV 733, 2009 WL 1380819, at *3 (N.D. Ill. May 14, 2009) (finding no waiver of arbitration right where Defendants "moved to dismiss prior to receiving the discovery that alerted them to the arbitration agreements").

## FACTUAL BACKGROUND[2]

Shah alleges that he has been the subscriber and user for the (847) XXX-1904 cellular telephone number since March 2024[3] (Compl. ¶ 16), that he uses the number for personal and not business purposes (*Id.* ¶¶ 17, 18), and that the number has been registered on the National DNC List since 2004. (*Id.* ¶ 19.) The crux of Shah's Complaint is that he allegedly received four marketing text messages to his phone number from Life Protect. (*Id.* ¶¶ 20–21.) Shah does not allege that he received any actual telephone calls—only text messages. (*Id.*) After receiving three text messages, Shah responded asking: "What's your website." (*Id.* ¶ 21.) Life Protect responded providing its website name. (*Id.*) Following his text asking about the website, Shah unsubscribed from Life Protect's texts. Shah does not allege any further texts from Life Protect. Shah alleges that he does not have an account with Life Protect, did not consent to be contacted by Life Protect, and did not provide Life Protect his phone number. (*Id.* ¶¶ 22–25.)

Based on these allegations, Shah filed this putative class action under the TCPA, seeking statutory damages for himself and putative class members. (*Id.* ¶¶ 36–37.) In the Complaint, Shah defines the putative class as: "All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial." (*Id.* ¶ 27.) The proposed class does not differentiate between putative class members who allegedly received text messages versus telephone calls. Yet Shah—the sole named plaintiff—alleges he received only texts.

---

[2] Life Protect does not concede the allegations in the Complaint, but it accepts them as true for the purpose of this Motion only.
[3] Life Protect adopts the same redaction as in the Complaint to Plaintiff's phone number. But for purpose of researching Life Protect's response to this Complaint, the parties met and conferred, and Plaintiff's counsel provided Plaintiff's full phone number to Life Protect.

## **LEGAL STANDARD**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[T]o survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief." *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 290–91 (N.D. Ill. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Dismissal is proper if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (quoting *Kennedy v. Nat'l Juv. Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999)).

## **ARGUMENT**

The TCPA has two primary restrictions: prohibiting robocalls and prohibiting telemarketing calls to numbers on the National DNC List. These prohibitions are found at 47 U.S.C. § 227(b) and § 227(c). Section 227(b) restricts the "use of automated telephone equipment," and prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" (commonly known as a "robocall"). 47 U.S.C. § 227(b)(1)(A). Section 227(c)(5), on the other hand, creates a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," which include telephone solicitations to phone numbers registered with the National DNC List. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Shah paints with broad strokes in alleging "numerous and multiple" violations of the TCPA (Compl. ¶¶ 34, 36), but he does not allege the use of an "automatic telephone dialing system or an artificial or prerecorded voice" (*i.e.*, he does not allege robocalls in violation of § 227(b)). (*See*

4

Compl. ¶¶ 2, 11, 12, 14.). Instead, Shah alleges only marketing text messages to his number listed on the National DNC List, which is plainly an attempt to plead an claim under § 227(c).

The Federal Communications Commission ("FCC") has promulgated regulations and issued guidance for the TCPA's robocall and National DNC List prohibitions. While the FCC lends important expertise when crafting and enforcing these regulations, the Supreme Court recently clarified two important tenets of statutory interpretation. First, a district court must interpret a legislative statute independently of the administrative agencies' interpretations. *McLaughlin Chiro. Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Second, a district court must undertake its interpretation according to the statute's plain and ordinary meaning at the time of its enactment. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (concluding the "whole point of having written statutes" is that "every statute's meaning is fixed at the time of enactment.") (internal citation omitted). Under these requisite principles, the sending of text messages to a phone number on the National DNC List is not actionable under the TCPA.

I.      **This Court cannot rely on the FCC's interpretation of the TCPA and instead must interpret § 227(c) according to its plain meaning.**

"[A] district court must independently determine for itself whether the agency's interpretation of a statute is correct." *McLaughlin Chiro. Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). In determining whether Shah has stated an actionable claim, the Court thus must undertake its own independent analysis of the TCPA's scope and cannot simply defer to the FCC's statements.

In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412–413 (2024), the Supreme Court overturned the principles of agency deference adopted in *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984), emphasizing that courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. The *Loper*

Court further instructed district courts to "determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the FCC's interpretation." *McLaughlin*, 606 U.S. at 155 (citing *Loper*, 603 U.S. at 369). But respect differs from deference. *Davis v. CVS Pharmac*y, No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *4 (N.D. Fla. Aug. 26, 2025) (distinguishing between the different concepts of "appropriate respect" and "appropriate deference").

Indeed, "'[t]he weight of such [agency] judgment in a particular case,' the [Supreme] Court observed, would 'depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Loper*, 603 U.S. at 370 (citing pre-*Chevron* approach in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Even when providing appropriate respect to an agency's view, courts should not adopt "a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." *Davis*, 2025 WL 2491195, at *4.

The Supreme Court has emphasized that courts should interpret a statute "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020). This approach aligns with finding the "best reading" of the statute. *Loper*, 603 U.S. at 400. While legislative purpose remains one "permissible indicator of meaning" for statutory interpretation, *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 482 (7th Cir. 2024), it "makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best." *Loper*, 603 U.S. at 373. Therefore, "unless words are otherwise defined, they 'will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)); *see also United States v. Berkos*,

543 F.3d 392, 396 (7th Cir. 2008) (noting courts should "assume that the legislative purpose of the statute is expressed by the ordinary meaning of the words used") (internal citations omitted); *United States v. Hyatt*, 28 F. 4th 776, 783 (7th Cir. 2022) (stating that where "common usage does not equate … two terms," the terms cannot have the same legal meaning under a statute).

## II.     Shah's TCPA claim for alleged violations of the National DNC list prohibition fails because text messages are not actionable under § 227(c).

### A. Section 227(c) allows lawsuits for "telephone calls"—not "text messages."

When interpreting the TCPA, "the text of the statute is the starting point." *Cent. States, Se. & Sw. Areas Pension Fund v. Wingra Redi-Mix, Inc.*, No. 21 C 3684, 2023 WL 199360, at *3 (N.D. Ill. Jan. 17, 2023) (citing *Van Buren v. United States*, 59 U.S. 374, 381 (2021)). The plain language of the TCPA's § 227(c)(5)—the provision that allows someone to suit for a National DNC list violation—creates a private right of action ***only*** for receipt of a "telephone call," not a "text message." 47 U.S.C. § 227(c)(5). So Shah's claim for receiving texts fails.

Congress left the terms "call" and "telephone call" undefined in the TCPA, which was enacted in 1991 to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991). Courts have since grappled with the "ambiguous nature" of these terms, at times expanding them to include text messages. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010) (collecting cases about whether "calls" include text messages under 47 U.S.C. § 227(b)); *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017) (considering whether text messages constitute "calls" under 47 U.S.C. § 227(b) when the issue was uncontested by parties). This approach stems from deference that courts previously gave to the FCC, whose 2003 Rules and Regulations, along with its 2012 Enforcement Advisory,

"interpret[] the term 'call' to 'encompass both voice calls and text calls to wireless numbers.'" *Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 WL 5386089, at *4 (N.D. Ill. Oct. 30, 2012) (citing *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 188 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("2003 FCC Order")); *see also* FCC Enforcement Advisory No. 2012-06, at *13–14 (Sept. 11, 2012).

But the plain meaning of the phrase "telephone call" in § 227(c) does not mean—and indeed, has never meant—the same thing as a "text message." To be sure, if someone stated in 1991, at the time of the TCPA's enactment, that a "telephone call" would be made, that person meant an audio call by telephone. *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. Jul. 21, 2025) (explaining that "text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages"). It defies logic that a "telephone call" would necessarily include a text message, particularly in 1991 when texts did not exist.

While technology and communications transformed in many ways since 1991, this distinction between a call and text remains. "[I]n today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* And a Florida federal court recently cast its agreement:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that matter.

*Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025).

Indeed, the TCPA itself makes this distinction, defining and distinguishing the term "text message" in other provisions of the statute. For instance, § 227(e) of the TCPA prohibits certain misleading or inaccurate Caller ID information. The TCPA defines a "text message" as "a message consisting of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service," which "includes a short message service (commonly referred to as 'SMS') message and a multimedia message service (commonly referred to as 'MMS) message." § 227(e)(8)(C)(i-ii). The statute goes on to specifically *exclude* "a real-time, two-way voice" communication. § 227(e)(8)(C)(iii). The TCPA uses this definition to define and distinguish between a "call" and a "text message" in exactly the same manner an ordinary person would if asked on the street. *See, e.g.,* § 227(e)(8)(A-B) (defining "caller identification information" and "caller identification service" with reference to either a "call made using a voice service" *or* "a text message sent using a text messaging service"). Not only did Congress define and distinguish the two methods for the purpose of the Caller ID prohibitions, it incorporated this definition to other sections of the TCPA by reference. *See* § 227(i)(2) and § 227(j)(2) ("In this subsection, the term 'text message' has the meaning given such term in subsection (e)(8).").

The plain text of the TCPA illustrates the obvious: Congress knows about text messages. From the repeated use of the term "text message" in the amended TCPA, it is clear that members of Congress knew about the rise in text message use and popularity as a means of telephonic communication when amending the law. If Congress wanted to expand § 227(c)(5) to include "text messages" in addition to "telephone calls" as actionable, it would have done so. But Congress elected not to do so, and it is not for the courts nor the FCC to gap-fill in the affirmative. *See, e.g.*, *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) ("That theory has it

backwards as a matter of basic separation of powers and administrative law. The FCC may only take action that Congress has *authorized*.").

Two recent cases are directly on point here, including one in a neighboring Seventh Circuit district court. In both *Jones* and *Davis,* the plaintiffs brought actions under 47 U.S.C. § 227(c)(5), alleging text messages purportedly sent in violation of the TCPA to residential telephone subscribers on the National DNC List. *Jones*, 2025 WL 2042764, at *2; *Davis*, 2025 WL 2491195, at *1. Both the *Jones* and *Davis* courts dismissed the plaintiffs' claims for violating the TCPA's National DNC List prohibition because those claims turned on the receipt of text messages, not telephone calls. *Jones*, 2025 WL 2042764, at *6 ("Plaintiffs have failed to state claims for violations of § 227(c) of the TCPA, 47 C.F.R. § 64.1200(c), and 47 C.F.R. § 64.1200(d) given that allegedly 'violative text messages' stand 'at the core of Plaintiffs' factual allegations.'"); *Davis*, 2025 WL 2491195, at *4.  Likewise, because Shah "alleged receiving only text messages" and "because text messages are not telephone calls, he has not stated a claim."  *Davis*, 2025 WL 2491195, at *4.

In *Jones*, the Central District of Illinois acknowledged the position "that text messages are calls . . . is an eminently reasonable one, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." 2025 WL 2042764, at *5. But this did not override the legal requirement that "in the business of statutory interpretation, if an interpretation is not the best, it is not permissible." *Id.* (citing *Loper*, 603 U.S. at 400) (cleaned up). Without "text message" or "SMS message" explicitly stated in § 227(c)(5), "[i]t is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025." *Id.*

In fact, this case is even stronger than the case before the *Jones* court. In *Jones*, the plaintiffs alleged receiving both text messages *and* telephone calls. Yet the Central District of Illinois found that "[p]laintiffs' reference to receipt of telephone calls in violation of the TCPA [were] few compared to their reference to text messages and inclusion of text message screenshots." *Jones*, 2025 WL 2042764, at *6. Therefore, "the crux of the [complaint] is that their receipt of repetitive text messages prompted them to seek relief pursuant to the TCPA." *Id.* But here, Shah's only allegation of communications are the handful of text messages he purportedly received from Life Protect. (Compl. ¶ 21.) Shah does not allege that he received a single telephone call—let alone the two phone calls in a 12-month period required for a § 227(c)(5) claim. This "is fatal to the Plaintiff's requests for injunctive and declaratory relief." *Jones*, 2025 WL 2042764, at *6.

The *Davis* court agreed with the *Jones* court, highlighting the fact that the ordinary and plain meaning of a "telephone call" versus a "text message" is unequivocal and ends the inquiry. *Davis*, 2025 WL 2491195, at *1 ("Certainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case."). Further, the defendant in *Davis* argued that the definition of a "residential telephone subscriber" under § 227(c) is not written to explicitly include a *cell* phone subscriber (and only includes landlines). *Id.* Life Protect agrees, especially because other provisions of the TCPA delineate a cell phone line from a residential telephone line. *See, e.g.*, §227(b) (prohibiting certain "artificial or prerecorded voice calls" to "any telephone assigned to a . . . cellular telephone service" (§227(b)(1)(A)(iii)) and separately, "any telephone call to any residential telephone line." §227(b)(1)(B). But, as in *Davis*, this Court need not "address the separate (and more difficult) question of whether a cell phone subscriber is a 'residential telephone subscriber," because "[e]ither way, [defendant] is entitled to the dismissal it seeks."

*Davis*, 2025 WL 2491195, at *1. Here, like in *Davis*, the Court can reach the more narrow result requiring dismissal that there is no private right of action to sue for text messages under §227(c).

### B. A ruling that Shah cannot sue for the alleged text messages affords FCC decisions appropriate respect.

While *Loper* and *McLaughlin* clarified how courts should approach statutory interpretation and confirm the analysis that text messages are not covered under § 227(c), this result is largely consistent with the FCC's prior determinations regarding the TCPA. The FCC's interpretations, and court decisions deferring to the same, are underpinned by the language and scope of § 227(b)—which applies exclusively to robocalls—and not § 227(c). *See, e.g.*, *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010); *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017). Courts have even pointed out that the FCC's 2003 Order "explicitly references only Section 227(b)." *Jones*, 2025 WL 2042764, at *4.

Based on this distinction, the *Jones* court found that "the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5)." *Id.* at *5. The *Jones* court noted that subsequent FCC orders, as well as 47 C.F.R. § 64.1200(e), largely "refer back to the 2003 Order which cites only Section 227(b)," and otherwise adopt an assumption of "'covered text messages' without any reference to Section 227(c)." *Id.* at *4. As a result, the *Jones* court rejected the plaintiffs' attempt to "cobble together the FCC's 2003 Order and several later FCC Orders (dated 2012, 2015, 2016), which they describe as 'unambiguous,' together with 47 C.F.R. § 64.1200(e) in an effort to establish that text messages apply under Section 227(c) of the TCPA." *Id.*

This logic extends to a more recent 2023 FCC decision, which sought to "codify that the National DNC Registry's protections apply to text messages." *In the Matter of Targeting and Eliminating Unlawful Text Messages Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991 Advanced Methods to Target and Eliminate Unlawful Robocalls*, 38 F.C.C.R. 12247, 12249 ¶ 2  (2023) ("2023 FCC Order"). Despite this overarching statement, the order explained that the FCC was "not expanding the National DNC Registry's restrictions," which historically stem from assuming, without deciding, that § 227(b)'s provisions apply to § 227(c). *Id.* at 12272 ¶ 63.  Indeed, the focus of these orders on § 227(b) is self-evident in the title of the 2023 FCC Order, which states its purpose is "*to Target and Eliminate Unlawful Robocalls*."

Following *McLaughlin*, even the applicability and weight of these Orders in a court's analysis of § 227(b) is dubious. But relying on them to interpret § 227(c) flies further afield from *McLaughlin*'s directive for independent review. Enforcement under § 227(c)(5) has, until recently, turned on analysis that is merely incidental to the FCC's focus on § 227(b). The Court can "respect" the central tenets of the FCC's analysis which have focused on § 227(b), while modifying their applicability to § 227(c) based on the TCPA's plain text. *McLaughlin*, 606 U.S. at 152.

The decisions reached in *Jones* and *Davis* do not run roughshod over the FCC. Indeed, FCC history reveals that the question of text messages' application under § 227(c) had a murky answer. The *Loper* and *McLaughlin* decisions have pushed district courts to find a clear answer based in the text and history of the TCPA. The differences in the ordinary and statutory definitions of "telephone call" and "text message" create a clear direction for the Court to recognize Congress' intentional omission of "text message" from the purview of § 227(c). Because Shah's entire Complaint relies on its erroneous inclusion, the Complaint should be dismissed with prejudice.

## **CONCLUSION**

For these reasons, Life Protect respectfully asks the Court to dismiss the Complaint, in its entirety, with prejudice.

DATED: September 16, 2025

Respectfully submitted,

LIFE PROTECT 24/7, INC.

By:    /s/ *Brian W. Ledebuhr*

Brian W. Ledebuhr (IL# 6294417)
Brian B. Druchniak (IL# 6332633
VEDDER PRICE P.C.
222 N. LaSalle St., Ste. 2600
Chicago, Illinois 60601
bledebuhr@vedderprice.com
bdruchniak@vedderprice.com

*Attorneys for Defendant*

VP/#73157554

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, I electronically filed the foregoing **Defendant's Motion to** Dismiss, and all corresponding documents, with the Clerk of the Court using the CM/ECF system, which will notify all attorneys of record of the filing of these documents.

/s/ *Brian W. Ledebuhr*_____

Brian W. Ledebuhr (IL# 6294417)
Brian B. Druchniak (IL# 6332633
VEDDER PRICE P.C.
222 N. LaSalle St., Ste. 2600
Chicago, Illinois 60601
bledebuhr@vedderprice.com
bdruchniak@vedderprice.com

*Attorneys for Defendant*

15