IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VISHAL SHAH, individually and on behalf of all others similarly situated, | : : : | Case No. 25-cv-9124 |
| Plaintiff, | : : | |
| v. | : : | |
| LIFE PROTECT 24/7, INC. | : : | |
| Defendant. | : : : : | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Vishal Shah, individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of counsel, and on information and belief, as follows:

**NATURE OF ACTION**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers" *id.* § 2(6), and sought to strike a balance between "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms" *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

      3.      Plaintiff bring this action to enforce the consumer-privacy provisions of the TCPA alleging that Life Protect 24/7, Inc. ("Life Protect 24/7") made telemarketing calls to numbers on the National Do Not Call Registry, including his own.

      4.      Because telemarketing campaigns typically use technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

      5.      A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

6. Plaintiff Vishal Shah is an individual who resides in this district.

7. Defendant Life Protect 24/7, Inc. is a corporation that sell medical alert devices.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9. This Court has specific personal jurisdiction over Defendant Life Protect 24/7 because it sent calls into this District, including as part of its efforts to obtain customers in this District.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the calls to the Plaintiff were sent into this District.

## TCPA BACKGROUND

The National Do Not Call Registry

11. § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

13. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

14. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

15. Life Protect 24/7 sells medical alert devices and makes telemarketing calls to solicit new business.

16. Plaintiff is, and has been since March 24, 2024, the subscriber to and customary user of his cellular telephone number—(847) XXX-1904.

17. This is the Plaintiff's personal and residential number.

18. This number is not associated with a business.

19. This number has been on the National Do Not Call list since 2004.

20. Despite that, Defendant placed at least four calls to telephone number (847) XXX-1904.

21. Those calls came in the form of text messages, which are below:

4



22. Plaintiff does not have, nor did he have, an account with Defendant.

23. Plaintiff never consented to be contacted by Defendant.

24. Plaintiff does not, nor did, owe any money to Defendant.

25. Plaintiff did not provide telephone number (847) XXX-1904 to Defendant.

26. Defendant placed the subject calls to telephone number (847) XXX-1904 voluntarily.

27. Plaintiff alleges that text messages are functionally indistinguishable from telephone calls for purposes of the TCPA both from the standpoint of telecommunications technology and consumer experience.

28. From a signaling perspective, both voice calls and Short Message Service ("SMS") text messages rely on the same underlying architecture of the public switched telephone network and cellular systems.

29. Both use the SS7 protocol to establish a communication session between a calling party and a subscriber line identified by a ten-digit telephone number.

30. When a telemarketer sends an SMS, the process of dialing and routing that message occurs in precisely the same way as placing a call—the system queries the same signaling network to locate and deliver the communication to the subscriber.

31. Transmission of calls and texts likewise proceeds over the same cellular pathways.

32. Whether a call delivers a continuous stream of voice packets or a text message delivers short bursts of alphanumeric data, both are packet-switched transmissions traveling over the carrier's cellular infrastructure to the handset.

33. The sole difference is the type of payload—voice audio packets versus small data strings. Both are initiated by the sender dialing the recipient's unique ten-digit number.

34. Plaintiff further alleges that from the consumer's perspective, the distinction between a call and a text is immaterial to the injury.

35. Both create an unsolicited "call event" on the device that intrudes on the user's privacy.

36. A text message, like a call, causes the phone to ring, vibrate, chime, or otherwise alert the user.

37. It appears in the device's call or message log, requires user attention to review and dismiss, and consumes the same finite channel of communication associated with the subscriber's number.

38. Industry practice confirms this equivalence. Carriers, billing systems, and the CTIA—the principal trade association for the wireless industry—categorize SMS texts as "call events" in technical records and billing logs.

39. Carriers generate call detail records ("CDRs") for both voice and SMS transmissions, and those records are used to measure traffic, bill customers, and track usage.

40. This consistent industry treatment underscores that a text message is not a distinct category of communication but simply one form of telephonic call traffic.

41. In fact, because text messages remain on the device until deleted, they can be even more disruptive than calls.

42. A call that is ignored may stop ringing, but a text message requires affirmative user action to read, dismiss, or delete.

43. This leaves the recipient with an enduring intrusion and an ongoing reminder of the unwanted solicitation.

## **CLASS ACTION ALLEGATIONS**

44. Plaintiff seeks certification of the following Class pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3):

> **Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from

7

or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

45. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Nichols anticipates the need to amend the Class definitions following appropriate discovery.

46. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

47. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA; and

    (b)    whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

48. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in class actions. The Plaintiff have no interests antagonistic to those of the Class, and Defendant have no defenses unique to the Plaintiff. The Plaintiff and their counsel are committed to vigorously

prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither the Plaintiff nor their counsel have any interest adverse to the Class.

49. **Appropriateness**: This class action is also appropriate for certification because the Defendant have acted or refused to act on grounds generally applicable to the Class and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff' challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

50. Plaintiff repeat and incorporate the allegations set forth in the prior paragraphs as if fully set forth herein.

51. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

9

52. The Defendant's violations were negligent, willful, or knowing.

53. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

54. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A. That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

B. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

C. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

DATED this 3rd day of October, 2025.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorney for Plaintiff and the putative Class*