IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VISHAL SHAH, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFE PROTECT 24/7, INC.,<br><br>Defendant. | Case No.  1:25-cv-09124<br><br>Honorable John Robert Blakey |

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Life Protect 24/7, Inc. ("Life Protect" or "Defendant"), respectfully moves to dismiss the First Amended Class Action Complaint [Dkt. 15] ("Amended Complaint") filed by Vishal Shah ("Shah" or "Plaintiff"). In support of this Motion, Life Protect states as follows:

### INTRODUCTION

Life Protect sells medical alert systems to interested consumers. It markets its services through text messages, but only once it receives prior express written consent from a consumer for a specific telephone number through an internet opt-in. Life Protect recently received consent from someone who provided Shah's alleged phone number. Relying on the opt-in, Life Protect then sent several texts to the phone number.

But Shah alleges he did not opt-in to get texts from Life Protect and that his phone number is on the national do-not-call registry ("National DNC List"). Life Protect's marketing texts thus, according to Shah, violated the TCPA's prohibition against making telemarketing *calls* to numbers on the National DNC List without appropriate consent or an established business relationship.

Shah seeks relief for himself and a putative class of consumers with numbers on the National DNC List who allegedly received texts in violation of the TCPA.

Because Life Protect always obtains prior express written consent before sending a marketing text, there is no ascertainable class of consumers who received texts from Life Protect in violation of the TCPA. While discovery would show this, Shah's case should not proceed past the pleadings. His Amended Complaint makes clear that his TCPA claims fail as a matter of law.

The problem for Shah is that the private right of action to enforce the TCPA's prohibition on telemarketing to phone numbers on the National DNC List only applies to *telephone calls*: "a person who has received more than one *telephone call* within any 12-month period" may bring suit. 47 U.S.C. § 227(c)(5) (emphasis added). Shah does not allege he received telephone calls, only that he received text messages. Yet calls and texts are not the same. And the TCPA's plain language and history show Congress understood the difference. So when Congress said in § 227(c) that someone can sue for violative "telephone calls," it meant just calls and not texts. Indeed, three months ago, a Seventh Circuit district court held exactly that.

Shah cannot avoid this fundamental flaw in his claim. And his Amended Complaint does not change that conclusion. Indeed, his Amended Complaint attempts to gloss over the legal deficiencies of his pleading with additional assertions that text messages and telephone calls are similar enough that the Court should extend § 227(c)'s purview to include both. But legal conclusions dressed up as additional factual allegations cannot override the plain language of the TCPA to save Shah's claims from dismissal. Shah cannot plead his away around his flawed interpretation of the TCPA because (1) text messages did not exist at the time of the TCPA's drafting and enactment; (2) other provisions of the TCPA have since been amended to include text messages, showing the terms "telephone call" and "text message" have two distinct meanings

under the TCPA; and (3) despite these amendments, Congress has left the language of § 227(c) untouched and limited to telephone calls. Shah's Amended Complaint thus, as a matter of law, must be dismissed with prejudice.[1]

## FACTUAL BACKGROUND[2]

Shah alleges that he has been the subscriber and user for the (847) XXX-1904 cellular telephone number since March 2024[3] (Am. Compl. ¶ 16), that he uses the number for personal and not business purposes (*id.* ¶¶ 17, 18), and that the number has been registered on the National DNC List since 2004 (*id.* ¶ 19). The crux of Shah's Amended Complaint is that he allegedly received four marketing text messages to his phone number from Life Protect. (*Id.* ¶¶ 20–21.) Shah does not allege that he received any actual telephone calls—*only* text messages. (*Id.*)

After receiving three text messages, Shah responded, asking: "What's your website[?]" (*Id.* ¶ 21.) Life Protect responded by providing its website name. (*Id.*) Following his text asking about

---

[1] Life Protect's internet "opt-in" to obtain prior express written consent for marketing texts requires consumers to agree to an arbitration provision and class action waiver. Presently, Life Protect's records suggest that someone other than Shah may have opted in to texts using Shah's phone number. Should this case proceed to discovery, party and third-party discovery may ultimately show that Shah indeed opted in and thus agreed to arbitrate any claims against Life Protect on an individual, and not class, basis. But at this pre-discovery stage of the case, Life Protect lacks sufficient information in its custody, possession, or control to move to compel arbitration against Shah. Life Protect, however, reserves its right to promptly move to compel arbitration later in the case should it discover facts that show Shah did, in fact, opt-in and thus agree to arbitrate this dispute. By anticipating and disclosing this possibility of arbitration rights against Shah and the putative class, and through prompt action should relevant facts arise, Life Protect maintains and does not waive its right to arbitrate through the filing of this Motion, nor through subsequent and necessary litigation activity, including discovery. *Williams v. Katten, Muchin & Zavis*, 837 F. Supp. 1430, 1442 (N.D. Ill. 1993) (finding no waiver of arbitration right where "Plaintiff was clearly aware of Defendant's desire to proceed to arbitration"); *Leff v. Deutsche Bank AG*, No. 08 CV 733, 2009 WL 1380819, at *3 (N.D. Ill. May 14, 2009) (finding no waiver of arbitration right where Defendants "moved to dismiss prior to receiving the discovery that alerted them to the arbitration agreements").

[2] Life Protect does not concede the allegations in the Amended Complaint, but accepts them as true for the purpose of this Motion only.

[3] Life Protect adopts the same redaction as in the Amended Complaint to Plaintiff's phone number. But for purpose of researching Life Protect's response to this Amended Complaint, the parties met and conferred, and Plaintiff's counsel provided Plaintiff's full phone number to Life Protect.

the website, Shah unsubscribed from Life Protect's texts. Shah does not allege any further texts from Life Protect.

Shah alleges that he does not have an account with Life Protect, did not consent to be contacted by Life Protect, and did not provide Life Protect his phone number. (*Id.* ¶¶ 22–25.) Shah does not allege anywhere that he received a telephone call outside of his alleged "calls" received "in the form of text messages." (*Id.* ¶ 21.) Instead, Shah's Amended Complaint attempts to patch over this critical flaw in his claim by alleging improper legal conclusions that telephone calls are the same as text messages under the TCPA. (*Id.* ¶¶ 27–43.)

Based on these allegations, Shah filed this putative class action under the TCPA, seeking statutory damages for himself and putative class members. (*Id.* ¶¶ 53–54.) In the Amended Complaint, Shah defines the putative class as he did in his original Complaint: "All persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial." (*Id.* ¶ 44.) The proposed class does not differentiate between putative class members who allegedly received text messages versus those who received telephone calls. Yet Shah—the sole named plaintiff—alleges he received only texts.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[T]o survive a motion to dismiss for failure to state a claim, the claim must be supported by facts that, if taken as true, at least plausibly suggest that the plaintiff is entitled to relief." *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 290–91 (N.D. Ill.

4

2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "The complaint's well-pled factual allegations, though not its legal conclusions, are assumed to be true." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013). "Dismissal is proper if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (quoting *Kennedy v. Nat'l Juv. Det. Ass'n*, 187 F.3d 690, 694 (7th Cir. 1999)).

## ARGUMENT

The TCPA has two primary restrictions: prohibiting robocalls and prohibiting telemarketing phone calls to numbers on the National DNC List. These prohibitions are found at 47 U.S.C. § 227(b) and § 227(c):

- **Section 227(b)** restricts the "use of automated telephone equipment," and prohibits "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" (commonly known as a "robocall"). 47 U.S.C. § 227(b)(1)(A).

- **Section 227(c)(5)**, on the other hand, creates a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection," which include telephone solicitations to phone numbers registered with the National DNC List. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Shah paints with broad strokes in alleging "numerous and multiple" violations of the TCPA (Am. Compl. ¶¶ 51, 53), but he does not allege Life Protect used an "automatic telephone dialing system or an artificial or prerecorded voice" (*i.e.*, made robocalls) in violation of § 227(b). (*See id*. ¶¶ 2, 11, 12, 14.) Instead, Shah alleges only marketing text messages to his phone number listed on the

5

National DNC List, which fall outside the purview of § 227(b). Whether he has stated a claim for relief thus turns solely on whether he has properly pleaded a violation of § 227(c).

The Federal Communications Commission ("FCC") has promulgated regulations and issued guidance for the TCPA's robocall and National DNC List prohibitions. While the FCC lends expertise when crafting and enforcing these regulations, the Supreme Court recently clarified two important tenets of statutory interpretation. First, a district court must interpret a legislative statute independently of the administrative agencies' interpretations. *McLaughlin Chiro. Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025). Second, a district court must undertake its interpretation according to the statute's plain and ordinary meaning *at the time of its enactment*. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (concluding the "whole point of having written statutes" is that "every statute's meaning is fixed at the time of enactment") (internal citation omitted). Under these requisite principles, and despite Shah's attempts to plead around this issue through his Amended Complaint, the sending of text messages to a phone number on the National DNC List is not actionable under the TCPA.

**I.      This Court cannot rely on the FCC's interpretation of the TCPA and instead must interpret § 227(c) according to its plain meaning.**

In determining whether Shah has stated an actionable claim under § 227(c), the Court must now undertake its own independent analysis of the TCPA's scope and cannot simply defer to the FCC's statements, nor can it defer to Shah's allegations equating texts with calls that amount to merely legal conclusions. *See McLaughlin Chiro. Assocs., Inc.*, 606 U.S. at 155.

In *Loper Bright Enterprises*, the Supreme Court overturned the principles of agency deference adopted in *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837 (1984), emphasizing that courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." 603 U.S. at 413. The *Loper* Court instructed district courts to

6

"determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin*, 606 U.S. at 155 (citing *Loper*, 603 U.S. at 369). But respect differs from deference. *Davis v. CVS Pharmacy*, No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *4 (N.D. Fla. Aug. 26, 2025) (distinguishing between the different concepts of "appropriate respect" and "appropriate deference"). Indeed, "'[t]he weight of such [agency] judgment in a particular case' . . . 'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Loper*, 603 U.S. at 370 (quoting pre-*Chevron* approach described in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Even so, courts should not adopt "a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text." *Davis*, 2025 WL 2491195, at *4.

This approach aligns with finding the "best reading" of the statute. *Loper*, 603 U.S. at 400. While legislative purpose remains one "permissible indicator of meaning" for statutory interpretation, *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 108 F.4th 458, 482 (7th Cir. 2024), it "makes no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best." *Loper*, 603 U.S. at 373. Therefore, "unless words are otherwise defined, they 'will be interpreted as taking their ordinary, contemporary, common meaning.'" *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (quoting *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014)); *see also United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (noting courts should "assume that the legislative purpose of the statute is expressed by the ordinary meaning of the words used") (internal citations omitted); *United States v. Hyatt*, 28 F. 4th 776, 783 (7th Cir. 2022) (stating that where "common usage does not equate . . . two terms," the terms cannot have the same legal meaning under a statute).

7

**II.     Shah's TCPA claim for alleged violations of the National DNC list prohibition fails because text messages are not actionable under § 227(c).**

**A. Section 227(c) allows lawsuits for "telephone calls"—not "text messages."**

When interpreting the TCPA, "the text of the statute is the starting point." *Cent. States, Se. & Sw. Areas Pension Fund v. Wingra Redi-Mix, Inc.*, No. 21 C 3684, 2023 WL 199360, at *3 (N.D. Ill. Jan. 17, 2023) (citing *Van Buren v. United States*, 59 U.S. 374, 381 (2021)). The plain language of the TCPA's § 227(c)(5)—the provision that allows someone to sue for a National DNC list violation—creates a private right of action *only* for receipt of a "telephone call," not a "text message." 47 U.S.C. § 227(c)(5). Shah's claim, based entirely on his receipt of texts, thus fails as a matter of law.

Congress left the terms "call" and "telephone call" undefined in the TCPA, but the Act as a whole makes clear that those terms do not encompass text messages. The TCPA was enacted in 1991 to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S. Rep. No. 102-178, at 1 (1991). Courts have since grappled with the "ambiguous nature" of these terms, at times expanding them to include text messages. *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1005 (N.D. Ill. 2010) (collecting cases about whether "calls" include text messages under 47 U.S.C. § 227(b)); *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017) (considering whether text messages constitute "calls" under 47 U.S.C. § 227(b) when the issue was uncontested by parties). This approach stems from the deference that courts previously gave to the FCC, whose 2003 Rules and Regulations, along with its 2012 Enforcement Advisory, "interpret[] the term 'call' to 'encompass both voice calls and text calls to wireless numbers." *Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 WL 5386089, at *4 (N.D. Ill. Oct. 30, 2012) (citing *In re Rules and Regulations*

8

*Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) ("2003 FCC Order") and FCC Enforcement Advisory No. 2012-06, FCC LEXIS 3863, at *13–14 (Sept. 11, 2012)).

But the plain meaning of the phrase "telephone call" in § 227(c) does not mean—and indeed, has never meant—the same thing as a "text message." To be sure, if someone stated in 1991, at the time of the TCPA's enactment, that a "telephone call" would be made, that person meant an audio call by telephone. *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at *4 (C.D. Ill. Jul. 21, 2025) (explaining that "text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages"). It defies logic that a "telephone call" could include a text message, particularly in 1991 when texts did not exist.

While technology and communications have transformed in many ways since 1991, the distinction between a call and text remains. "[I]n today's American parlance, 'telephone call' means something entirely different from 'text message.'" *Id.* And everyone knows this, as a Florida federal court recently said:

> No normal person refers to a text message, or thinks of a text message, as a "call." No ordinary user of the English language would write the sentence "John called Sue" intending to mean "John sent a text message to Sue," nor would any ordinary reader interpret the sentence in that matter.

*Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025). Indeed, the TCPA itself makes this distinction, defining and distinguishing the term "text message" in the statute.

For instance, § 227(e) of the TCPA (which addresses a separate prohibition on certain misleading or inaccurate Caller ID information) defines a "text message" as "a message consisting

9

of text, images, sounds, or other information that is transmitted to or from a device that is identified as the receiving or transmitting device by means of a 10-digit telephone number or N11 service," which "includes a short message service (commonly referred to as 'SMS') message and a multimedia message service (commonly referred to as 'MMS) message." § 227(e)(8)(C)(i-ii). The statute goes on to specifically *exclude* "a real-time, two-way voice" communication. § 227(e)(8)(C)(iii). The TCPA uses this definition to define and distinguish between a "call" and a "text message" in exactly the same manner an ordinary person would if asked on the street. *See, e.g.*, § 227(e)(8)(A-B) (defining "caller identification information" and "caller identification service" with reference to either a "call made using a voice service" *or* "a text message sent using a text messaging service"). Not only did Congress define and distinguish the two methods for the purpose of the Caller ID prohibitions, it incorporated this definition to other sections of the TCPA by reference. *See* § 227(i)(2) and § 227(j)(2) ("In this subsection, the term 'text message' has the meaning given such term in subsection (e)(8).").

The plain text of the TCPA illustrates the obvious: Congress knew about text messages when amending the Act. From the repeated use of the term "text message" in the amended TCPA, it is clear that Congress knew about the rise in text message use and popularity as a means of telephonic communication when amending the law. If Congress wanted to expand § 227(c)(5) to include "text messages" in addition to "telephone calls" as actionable, it would have done so. But Congress elected not to do so, and it is not for the courts nor the FCC to broaden the statute beyond the plain meaning of its language. *See, e.g.*, *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) ("That theory has it backwards as a matter of basic separation of powers and administrative law. The FCC may only take action that Congress has *authorized*.").

This is particularly true when a review of legislative history shows that a bill was introduced, but not passed, in 2022 to redefine § 227(b) to explicitly include text messages. H.R. 8334, 117th Cong. (2022) (proposing amendment of the Communications Act of 1934 to "prohibit the use of automated telephone equipment to send unsolicited text messages"). Congress thus has taken note that the plain language of § 227(b) does not include text messages and declined to act. An interpretation of § 227(c)(5) to include "text messages" would fly just as far afield of the Act.

Two recent cases—including one in a neighboring Seventh Circuit district court—are right on point and show that Shah's Amended Complaint must be dismissed. In both *Jones* and *Davis*, the plaintiffs brought actions under § 227(c)(5), alleging text messages purportedly sent in violation of the TCPA to residential telephone subscribers on the National DNC List. *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at *2 (C.D. Ill. Jul. 21, 2025); *Davis v. CVS Pharmacy, Inc.*, No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *1 (N.D. Fla. Aug. 26, 2025). Both courts dismissed the plaintiffs' claims for violating the TCPA's National DNC List prohibition because those claims turned on the receipt of text messages, not telephone calls. *Jones*, 2025 WL 2042764, at *6; *Davis*, 2025 WL 2491195, at *4. Likewise, because Shah has "alleged receiving only text messages," "and because text messages are not telephone calls, he has not stated a claim." *Davis*, 2025 WL 2491195, at *4.

In *Jones*, the Central District of Illinois acknowledged the position "that text messages are calls . . . is an eminently reasonable one, particularly given the TCPA's purpose and the prevalence of text messaging in the U.S. today." 2025 WL 2042764, at *5. But this did not override the legal requirement that "in the business of statutory interpretation, if an interpretation is not the best, it is not permissible." *Id.* (citing *Loper*, 603 U.S. at 400) (cleaned up). Without "text message" or "SMS message" explicitly stated in § 227(c)(5), "[i]t is for Congress to respond to the issues

11

presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025." *Id.*

In fact, this case is even stronger than the case before the *Jones* court. In *Jones*, the plaintiffs alleged receiving a combination of text messages *and* telephone calls. Yet the Central District of Illinois found that "[p]laintiffs' reference to receipt of telephone calls in violation of the TCPA [were] few compared to their reference to text messages and inclusion of text message screenshots." *Jones*, 2025 WL 2042764, at *6. Therefore, "the crux of the [complaint] is that their receipt of repetitive text messages prompted them to seek relief pursuant to the TCPA." *Id.* But here, Shah's only allegation of communications are the handful of text messages he purportedly received from Life Protect. (Am. Compl. ¶ 21.) Shah does not allege that he received a single telephone call—let alone the two phone calls in a 12-month period required for a § 227(c)(5) claim. (*See generally id.*) This "is fatal to the Plaintiff's requests for injunctive and declaratory relief." *Jones*, 2025 WL 2042764, at *6.

The *Davis* court agreed with the *Jones* court, highlighting the fact that the ordinary and plain meaning of a "telephone call" versus a "text message" is unequivocal and ends the inquiry. *Davis*, 2025 WL 2491195, at *1 ("Certainly, no ordinary person would think of a text message as a '*telephone* call.' This conclusion – supported by the ordinary public meaning at the time of the provision' enactment – is enough to end this case."). Further, the defendant in *Davis* argued that the definition of a "residential telephone subscriber" under § 227(c) is not written to explicitly include *cell* phone subscribers (and only includes *landline* subscribers). *Id.* Life Protect agrees, especially because other provisions of the TCPA delineate a cell phone line from a residential telephone line. *See, e.g.*, § 227(b) (prohibiting certain "artificial or prerecorded voice" calls to "any telephone number assigned to a . . . cellular telephone service" (§227(b)(1)(A)(iii)) and separately,

12

"any telephone call to any residential telephone line." §227(b)(1)(B).) But, as in *Davis*, this Court need not "address the separate (and more difficult) question of whether a cell phone subscriber is a 'residential telephone subscriber,'" because "[e]ither way, [defendant] is entitled to the dismissal it seeks." *Davis*, 2025 WL 2491195, at *1. Here, like in *Davis*, the Court can reach the more narrow result requiring dismissal that there is no private right of action to sue for text messages under §227(c).

Shah's attempts in his Amended Complaint to conflate text messages with phone calls do nothing to override the "plain meaning" of each term, and only highlights the daylight between his allegations and a well-pled complaint under the "plain meaning" of the TCPA. The Amended Complaint urges the Court to equate text messages and phone calls based on alleged "similarities" between the two, from "the standpoint of telecommunications technology and consumer experience." (*See* Am. Compl. ¶¶ 27–32, 34–39.) But a plaintiff cannot use such arguments to "override the statute's plain meaning." *Verizon Comm's Inc. v. FCC*, No. 24-1733, 2025 WL 2609127, at *6 (2d Cir. Sept. 10, 2025).

Shah even admits that "the distinction between a call and a text" exists. (Am. Compl. ¶ 34.) Rather than recognize this plain "distinction," however, Shah suggests the Court should engage in an inquiry as to whether two terms are "similar" enough to be given equivalent meaning under a statute. But similarities between two items do not make them *the same*. Indeed, Shah's own belabored explanation for why two different words should be viewed as the same highlights the fact that the plain meaning of each word differs—otherwise, there would be no need for such explanation. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 653 (2020)) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit.").

### B. A ruling that Shah cannot sue under § 227(c) for the alleged text messages affords FCC decisions appropriate respect.

*Loper* and *McLaughlin* clarified how courts should approach statutory interpretation and confirm the conclusion that text messages are not covered under § 227(c). This conclusion is also largely consistent with the FCC's prior determinations for the TCPA. The FCC's interpretations, and court decisions deferring to the same, are underpinned by the language and scope of *§ 227(b)*—which applies exclusively to robocalls—and not *§ 227(c)*. See, e.g., *Lozano*, 702 F. Supp. 2d at 1005; *Blow*, 855 F.3d at 798. Courts have even pointed out that the FCC's 2003 Order "explicitly references only Section 227(b)." *Jones*, 2025 WL 2042764, at *4.

Based on this distinction, the *Jones* court found that "the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5)." *Id.* at *5. The *Jones* court noted that subsequent FCC orders, as well as 47 C.F.R. § 64.1200(e), largely "refer back to the 2003 Order which cites only Section 227(b)," and otherwise adopt an assumption of "'covered text messages' without any reference to Section 227(c)." *Id.* at *4. As a result, the *Jones* court rejected the plaintiffs' attempt to "cobble together the FCC's 2003 Order and several later FCC Orders (dated 2012, 2015, 2016), which they describe as 'unambiguous,' together with 47 C.F.R. § 64.1200(e) in an effort to establish that text messages apply under Section 227(c) of the TCPA." *Id.*

This logic extends to a more recent 2023 FCC decision, which sought to "codify that the National DNC Registry's protections apply to text messages." *In the Matter of Targeting and Eliminating Unlawful Text Messages Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Advanced Methods to Target and Eliminate Unlawful Robocalls*, 38 F.C.C.R. 12247, 12249 ¶ 2 (2023) ("2023 FCC Order"). Despite this overarching statement, the order explained that the FCC was "not expanding the National DNC Registry's restrictions,"

14

which historically stem from the FCC and courts assuming, without deciding, that § 227(b)'s provisions apply to § 227(c). *Id.* at 12272 ¶ 63. Indeed, the focus of these orders on § 227(b) is self-evident in the title of the 2023 FCC Order, which states that its purpose is "*to Target and Eliminate Unlawful Robocalls*."

Following *McLaughlin*, the applicability and weight of these orders in a court's analysis of even § 227(b) is dubious. Further, enforcement under § 227(c)(5) has, until recently, turned on analysis that is merely incidental to the FCC's focus on § 227(b). The Court thus can "respect" the central tenets of the FCC's analysis which have focused on § 227(b), while understandably modifying their applicability to § 227(c) based on the TCPA's plain text. *McLaughlin*, 606 U.S. at 152.

The decisions reached in *Jones* and *Davis* do not trample on the FCC. Indeed, FCC history reveals that the question of text messages' application under § 227(c) had a murky answer. The *Loper* and *McLaughlin* decisions have pushed district courts to find a clear answer based in the text and history of the TCPA. The differences in the ordinary and statutory definitions of "telephone call" and "text message" provide a clear direction for the Court to recognize Congress's intentional omission of "text message" from the purview of § 227(c). Because the entire Amended Complaint relies on its erroneous inclusion of text messages within the bounds of § 227(c), it should be dismissed with prejudice.

## CONCLUSION

For these reasons, Life Protect respectfully asks the Court to dismiss the Amended Complaint, in its entirety, with prejudice.

DATED: October 24, 2025

        Respectfully submitted,

        LIFE PROTECT 24/7, INC.

By:   */s/ Matthew C. Arentsen*

        Matthew C. Arentsen (CO 45021)
        (*admitted pro hac vice*)
        BROWNSTEIN HYATT FARBER SCHRECK, LLP
        675 15th Street, Suite 2900
        Denver, CO 80202
        marentsen@bhfs.com

        Brian W. Ledebuhr (IL# 6294417)
        Brian B. Druchniak (IL# 6332633
        VEDDER PRICE P.C.
        222 N. LaSalle St., Ste. 2600
        Chicago, Illinois 60601
        bledebuhr@vedderprice.com
        bdruchniak@vedderprice.com

        *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I electronically filed the foregoing **Defendant's Motion to Dismiss Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system, which will notify all attorneys of record of the filing of this document.

*/s/ Matthew C. Arentsen*

Matthew C. Arentsen (CO 45021)
(*admitted pro hac vice*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, CO 80202
marentsen@bhfs.com

Brian W. Ledebuhr (IL# 6294417)
Brian B. Druchniak (IL# 6332633
VEDDER PRICE P.C.
222 N. LaSalle St., Ste. 2600
Chicago, Illinois 60601
bledebuhr@vedderprice.com
bdruchniak@vedderprice.com

*Attorneys for Defendant*